LAWRENCE H. LUCEY, Plaintiff-Appellant, v. LAW OFFICES OF PRETZEL AND STOUFFER, CHARTERED, *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—96—2659

Opinion filed November 12, 1998.

William S. Wigoda, of Law Offices of William S. Wigoda, Ltd., of Chicago, for appellant.

Michael A. Pope and Jeffrey C. Clark, both of McDermott, Will & Emery, of Chicago, for appellees.

JUSTICE LEAVITT delivered the opinion of the court:

Plaintiff Lawrence Lucey brought the present action for legal malpractice against defendants Theodore Gertz and the law firm of Pretzel & Stouffer. The trial court dismissed plaintiff's amended complaint with prejudice on the basis that the statute of limitations on the malpractice action had expired. Plaintiff now appeals, arguing the trial court erred in dismissing his complaint and not permitting him to amend his complaint if it was properly dismissed.

■ Inasmuch as this case was dismissed pursuant to a motion brought under section 2—619 of the Code of Civil Procedure (Code) (725 ILCS 5/2—619 (West 1996)), we accept as true all well-pleaded facts in plaintiff's complaint. See *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85, 651 N.E.2d 1132 (1995). Plaintiff's first amended complaint alleged the following. In July 1989, plaintiff was employed by The Chicago Corporation, which was in the business of providing advice and brokerage services to individuals, trusts, and corporations. Michigan Physicians Mutual Liability Company (Michigan Physicians) was a client of The Chicago Corporation, and plaintiff was responsible for this account. As an integral part of his duties at The Chicago Corporation, plaintiff would on occasion attend investment committee meetings of Michigan Physicians and counsel the investment committee regarding the company's portfolio. Michigan Physicians requested plaintiff attend its investment committee meeting scheduled for July 19, 1989.

That same month, plaintiff contemplated resigning from The Chicago Corporation and starting his own firm. On July 16, 1989, plaintiff sought legal advice from Theodore Gertz and the law firm of Pretzel & Stouffer regarding the propriety of soliciting clients prior to his resignation. Specifically, plaintiff wanted to know whether he could attend an upcoming Michigan Physicians meeting and what information he would be entitled to disclose at that meeting regarding his decision to resign from The Chicago Corporation and start his own firm. Gertz advised plaintiff he could attend the meeting if he did so in his individual capacity and not as an employee of The Chicago Corporation. Gertz suggested plaintiff pay his own expenses to attend the meeting. He further advised plaintiff to inform The Chicago Corporation, prior to attending the meeting, he was resigning to start his own firm and would be attending the meeting in his individual capacity.

In reliance on this advice, plaintiff attended the Michigan Physicians meeting in his individual capacity and at his own expense. At that meeting, he disclosed his decision to leave The Chicago Corporation and begin his own firm. On July 31, plaintiff informed The Chicago Corporation of his decision to resign, effective August 15. On

August 7, Michigan Physicians informed The Chicago Corporation it would be transferring its portfolio to plaintiff's new firm. On August 25, The Chicago Corporation filed suit against plaintiff based upon the loss of the Michigan Physicians account (the *Chicago Corporation* suit).

Plaintiff retained Gertz and Pretzel & Stouffer to defend him in the *Chicago Corporation* suit. Throughout plaintiff's representation by defendants in this suit, defendants continually advised plaintiff he had a valid defense to the claims asserted by The Chicago Corporation. In June or July of 1994, for reasons unrelated to the *Chicago Corporation* suit, plaintiff requested defendants withdraw from representing him. Plaintiff then retained other counsel. At the time of plaintiff's complaint, the *Chicago Corporation* suit was still pending.

Plaintiff filed the instant malpractice action against defendants on July 11, 1995. The only date relevant to the statute of limitations in this complaint was July 1989, the date the allegedly negligent advice was given. Defendants filed a motion to dismiss, arguing plaintiff's cause of action, having accrued in July 1989, was barred by the five-year statute of limitations applicable to legal malpractice actions accruing prior to January 1, 1991. See 735 ILCS 5/13—205 (West 1992). In response to this motion, plaintiff filed his first amended complaint, the contents of which we have just set forth.

Defendants again filed a motion to dismiss, pursuant to section 2—619 of the Code (735 ILCS 5/2—619(a)(5) (West 1996)), arguing plaintiff's action was barred by the applicable five-year statute of limitations. Defendants acknowledged plaintiff's first amended complaint did set forth a new date (June or July 1994—the date upon which plaintiff's representation by defendants ended) for statute of limitations purposes. They argued plaintiff's action was, nonetheless, still barred by the five-year statute of limitations, since Illinois does not recognize the "continuous representation rule." This rule, in theory, would toll the running of the statute of limitations until representation by the defendants ceased. See *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 544, 646 N.E.2d 23 (1995). The trial court dismissed plaintiff's complaint, with prejudice, on the basis that the only harm alleged by plaintiff was the filing of the *Chicago Corporation* suit on August 25, 1989, resulting in the statute of limitations expiring on August 25, 1994.

The primary thrust of the parties' arguments on appeal, both in their briefs and at oral argument, concerns the application, under *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 633 N.E.2d 627 (1994), of equitable estoppel, *i.e.*, whether defendants should be equitably estopped from asserting the statute of limitations

defense because plaintiff's delay in bringing suit was induced by defendants' reassurances that plaintiff had a valid defense to the claims made by The Chicago Corporation. As plaintiff acknowledges in his brief, however, it appears from both the trial judge's oral pronouncements and her written order that the judge was more concerned with the fact that the underlying *Chicago Corporation* litigation was unresolved and plaintiff, therefore, could allege no damages at that point. Without damages, the trial court reasoned, plaintiff's malpractice action had not yet accrued, and both the statute of limitations and the doctrine of equitable estoppel would be inapplicable. *Cf. Jackson Jordan*, 158 Ill. 2d at 253 (discussing equitable estoppel in a case where the defendant law firm's representation of the plaintiff continued past date of entry of first ruling adverse to plaintiff).

■ We agree with the trial court that plaintiff's malpractice action was premature, at least in the procedural context presented here. The elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that "but for" the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages. *Serafin v. Seith*, 284 Ill. App. 3d 577, 586-87, 672 N.E.2d 302 (1996). The injuries resulting from legal malpractice are not personal injuries but pecuniary injuries to intangible property interests. *Glass v. Pitler*, 276 Ill. App. 3d 344, 349, 657 N.E.2d 1075 (1995). Damages must be incurred and are not presumed (*Farm Credit Bank v. Gamble*, 197 Ill. App. 3d 101, 103, 554 N.E.2d 779 (1990)), and the plaintiff must affirmatively plead and prove that he suffered injuries as a result of the attorney's malpractice. *Bartholomew v. Crockett*, 131 Ill. App. 3d 456, 465, 475 N.E.2d 1035 (1985). Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists. See *Farm Credit Bank*, 197 Ill. App. 3d at 104.

■ Both parties have asserted at various times in the proceedings leading to this appeal that plaintiff's cause of action accrued in July 1989, when the allegedly negligent advice was first given. That is not the law in Illinois. Defendants may have breached a duty owed plaintiff when they gave him allegedly negligent advice in July 1989, but a cause of action for legal malpractice does not accrue until a plaintiff discovers, or within a reasonable time should discover, his injury and incurs damages directly attributable to counsel's neglect. See *Goran v. Glieberman*, 276 Ill. App. 3d 590, 594-95, 659 N.E.2d 56 (1995). In *Goodman v. Harbor Market, Ltd.*, 278 Ill. App. 3d 684, 663 N.E.2d 13

(1995), this court commented upon the position taken by the parties in this case:

> "The relationship between an attorney and the client is one in which the attorney is charged with a duty to act skillfully and diligently on the client's behalf. Given the duty, the client is presumed unable to discern any misapplication of legal expertise. As the California Supreme Court has stated:
>
>> 'If [the client] must ascertain malpractice at the moment of its incidence, the client must hire a second professional to observe the work of the first, an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client.' (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971), 6 Cal. 3d 176, 188, 491 P.2d 421, 428, 98 Cal. Rptr. 837, 844.)
>
> Therefore, it is 'the realized injury to the client, not the attorney's misapplication of the expertise, [which] marks the point in time for measuring compliance with a statute of limitations period.' " *Goodman*, 278 Ill. App. 3d at 689-90, quoting *Hermitage Corp.*, 166 Ill. 2d at 89-90 (Freeman, J., dissenting).

The trial court justifiably questioned whether the statute of limitations had even begun to run in this case.

If no cause of action accrued in July 1989, the question becomes when (if at all) did plaintiff's cause of action against defendants accrue? Neither party in this case has provided us with much argument or citation to authority on this point, although it clearly appears to have been the foremost concern of the trial court in dismissing this case. Plaintiff (without citation to authority) and defendants (in a footnote) both assert that, even if we find no cause of action accrued at the time the allegedly negligent advice was given, plaintiff's malpractice action accrued when he dismissed defendants as counsel and began incurring attorney fees to defend himself in the *Chicago Corporation* litigation. That argument has some support in the case law, primarily from this court's decision in *Goran*. See *Goran*, 276 Ill. App. 3d at 595; *Zelenka v. Krone*, 294 Ill. App. 3d 248, 253, 689 N.E.2d 1154 (1997) (following *Goran*); *Palmros v. Barcelona*, 284 Ill. App. 3d 642, 647, 672 N.E.2d 1245 (1996) (following *Goran*).

In *Goran*, the plaintiff was represented by the defendant attorney in an appeal from an adjudication of marriage dissolution and child custody. The defendant filed an appellant's brief but then withdrew from the appeal. The plaintiff subsequently hired other counsel to represent her. The subsequently retained attorneys were required by the appellate court to redo the appellate brief written by the defendant, as well as the record on appeal, to bring them both into compliance with court rules. Subsequent counsel incurred fees of $11,000 reviewing the

case and $1,297 in redoing the record and appellant's brief. The plaintiff eventually lost her appeal and filed a malpractice action against the defendant.

The appellate court in *Goran* held the plaintiff incurred actionable damages—and, thus, her cause of action accrued—when she paid $1,297 in attorney fees to bring her brief into compliance with court rules, as ordered by the appellate court. *Goran*, 276 Ill. App. 3d at 595-96. The court was careful to distinguish the $11,000 in fees, which "was not actionable as a result of [defendant]'s neglect but was simply incurred as a result of his permitted withdrawal from the case." *Goran*, 276 Ill. App. 3d at 596. Thus, although the $1,297 in attorney fees triggered the running of the statute of limitations, the only reason these damages were actionable was that a clear finding of attorney neglect had already been made in that case. As the defendant argued, and the appellate court impliedly accepted, "regardless of whether the [trial court's] decision was reversed or affirmed, [the plaintiff] sustained damages" when she paid to have her brief redone. *Goran*, 276 Ill. App. 3d at 595. Thus, the *Goran* holding is a limited one: the incurring of additional attorney fees may trigger the running of the statute of limitations for legal malpractice purposes, but only where it is clear, at the time the additional fees are incurred, that the fees are directly attributable to former counsel's neglect (such as through a ruling adverse to the client to that effect). We reject the parties' assertion that subsequently incurred attorney fees will, in every case, automatically give rise to a cause of action for legal malpractice against former counsel.

■ Admittedly, where an attorney's neglect is a direct cause of the legal expenses incurred by the plaintiff, the attorney fees incurred are recoverable as damages. *National Wrecking Co. v. Coleman*, 139 Ill. App. 3d 979, 983-84, 487 N.E.2d 1164 (1985); *Sorenson v. Fio Rito*, 90 Ill. App. 3d 368, 373-74, 413 N.E.2d 47 (1980). However, the converse of this rule is equally true: where an attorney's neglect is *not* a direct cause of the legal expenses incurred by the plaintiff (*i.e.*, the plaintiff prevails when sued or loses for reasons other than incorrect legal advice), the attorney fees incurred are generally not actionable. Since it is also possible the former client will prevail when sued by a third party, damages are entirely speculative until a judgment is entered against the former client or he is forced to settle. When uncertainty exists as to the very fact of damages, as opposed to the amount of damages, damages are speculative (*Goran*, 276 Ill. App. 3d at 595), and no cause of action for malpractice can be said to exist.

The trial court in this case recognized these concerns. The following colloquy occurred prior to the judge's ruling:

"THE COURT: If [plaintiff] wins the litigation with The Chicago Corporation, then the advice he got from Pretzel & Stouffer was not malpractice. He has to have damages to have a malpractice claim, doesn't he?

\* \* \*

MR. GOODMAN [Plaintiff's counsel]: There are two problems: The question is whether or not they are quantified. I do believe there are damages.

THE COURT: What are they?

MR. GOODMAN: Well, the damages, at this point, would be the attorney fees.

THE COURT: But if he wins the litigation—I thought about that too. If he wins the litigation, the attorney fees are not as a result of any malpractice. They are the result of being sued by someone. Pretzel & Stouffer never guaranteed he would not be sued."

Plaintiff himself acknowledges that he may never have a cause of action against defendants in the prayer for relief in his first amended complaint. Tellingly, plaintiff struggled to put a finger on his damages when forced to state the relief he sought. In each count of his complaint, plaintiff first seeks "[a]n award for damages exceeding $30,000 as a result *of any judgment* for monetary damages *that may be entered* against the Plaintiff" in the *Chicago Corporation* litigation. (Emphasis added.)

Illinois courts have frequently recognized, either expressly or implicitly, that a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney. See *Hermitage Corp.*, 166 Ill. 2d at 84-87 (where plaintiffs alleged defect in mechanics lien prepared by defendants, statute of limitations began running when circuit court first entered order reducing the amount of the lien); *Jackson Jordan*, 158 Ill. 2d at 253 (mere filing of a lawsuit against client insufficient to trigger running of statute of limitations); *Glass*, 276 Ill. App. 3d at 354-55 (where plaintiffs claimed that, contrary to the advice of defendant attorneys, their pension funds would not have been protected from creditors had they filed a petition for bankruptcy, damages were speculative, and malpractice action properly dismissed, since there was no ruling by a bankruptcy court and law was unsettled); *Goran*, 276 Ill. App. 3d at 595-96 (attorney fees incurred after court order finding defendant had negligently performed legal work triggered cause of action); *Belden v. Emmerman*, 203 Ill. App. 3d 265, 269-70, 560 N.E.2d 1180 (1990) (statute of limitations in legal malpractice action started to run when the circuit court entered the order that was the subject of the legal malpractice action, not when

the circuit court declined to vacate the order or thereafter); *Zupan v. Berman*, 142 Ill. App. 3d 396, 399, 491 N.E.2d 1349 (1986) ("the adverse result at the time of the end of the trial is the operative factor" in determining when statute of limitations in legal malpractice action commenced, not the date of the denial of posttrial motions); *Bartholomew*, 131 Ill. App. 3d at 465 (where attorney's negligence resulted in dismissal of one of two tortfeasors in plaintiff's suit, malpractice action properly dismissed as premature since actual damages would occur only if plaintiff failed to recover or failed to fully recover against remaining tortfeasor); *Gruse v. Belline*, 138 Ill. App. 3d 689, 698, 486 N.E.2d 398 (1985) (evidence of two judgments entered against plaintiff, allegedly due to attorney's negligence, was sufficient proof of damages, regardless of whether judgments had been paid or collected yet); *Bronstein v. Kalcheim & Kalcheim, Ltd.*, 90 Ill. App. 3d 957, 959-60, 414 N.E.2d 96 (1980) (dismissing as premature plaintiff's malpractice complaint against attorneys for negligent tax advice, since issuance of a notice of deficiency did not establish plaintiff had suffered a loss; plaintiff would have actionable damages only after a liability determination was made by tax court). But see *Goodman*, 278 Ill. App. 3d at 690 (finding date plaintiff was sued due to attorney's alleged negligence to be date plaintiff's cause of action accrued, where that was the "undisputed date" of discovery).

■ Sound policy reasons exist in opposition to a rule which would require the client file a provisional malpractice action against his attorney whenever the attorney's legal advice has been challenged. Among them are judicial economy and preservation of the attorney-client relationship. As our supreme court recognized in *Jackson Jordan*:

> "The mere assertion of a contrary claim and the filing of a lawsuit [by a third party] were not, in and of themselves, sufficiently compelling to induce [a] client to seek a second legal opinion. Meritless claims and nuisance lawsuits are, after all, a fairly commonplace occurrence. It would be a strange rule if every client were required to seek a second legal opinion whenever it found itself threatened with a lawsuit." *Jackson Jordan*, 158 Ill. 2d at 253.

See also *International Engine Parts, Inc. v. Feddersen & Co.*, 9 Cal. 4th 606, 620, 888 P.2d 1279, 1287, 38 Cal. Rptr. 2d 150, 158 (1995) (where client brought accountant malpractice action based upon accountant's negligent filing of tax returns, rule that cause of action does not accrue until date of deficiency tax assessment conserves judicial resources); *ITT Small Business Finance Corp. v. Niles*, 9 Cal. 4th 245, 257, 885 P.2d 965, 972, 36 Cal. Rptr. 2d 552, 559 (1994) (holding it would be a waste of judicial resources to require both the

underlying litigation and the legal malpractice action to be litigated simultaneously, rejecting argument that "actual injury" occurred when client incurred attorney fees due to attorney's alleged negligence); T. Ochoa & A. Wistrich, *Limitation of Legal Malpractice Actions: Defining Actual Injury and the Problem of Simultaneous Litigation*, 24 Sw. U.L. Rev. 1, 22-23 (1994) (noting "[i]t makes little sense to clog court dockets and expend limited judicial time and resources in litigating malpractice actions which may be avoided completely by a favorable result in the pending proceeding"). Simultaneous litigation raises the possibility of inconsistent verdicts and may well be disadvantageous to both the attorney and client. See *United States National Bank v. Davies*, 274 Or. 663, 667, 548 P.2d 966, 968-70 (1976) (simultaneous litigation may be "disastrous" to both attorney and client, since client will be taking polar positions in each suit permitting his impeachment in his defense of the underlying suit); *Dearborn Animal Clinic v. Wilson*, 248 Kan. 257, 269-70, 806 P.2d 997, 1005-06 (1991) (following *Davies*, rejecting argument that malpractice action accrued when plaintiff's incurred attorney fees due to attorney's alleged negligence); 24 Sw. U.L. Rev. at 19-23 (noting that exposing the attorney's error by filing a malpractice action may alert the other party in the underlying action to potentially beneficial information or defenses and cause damages that might not otherwise have arisen; malpractice action also may waive attorney-client privilege to client's detriment in the pending litigation).

█ In light of the foregoing principles, we believe the trial court correctly dismissed plaintiff's action in this case as premature. This is not a case where it is plainly obvious, prior to any adverse ruling against the plaintiff, that he has been injured as the result of professional negligence. See *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 674, 681 N.E.2d 617 (1997) (where client brought malpractice action against certified public accounting firm alleging firm failed to detect warehouse fraud and embezzlement, professional opinion of new accountants was not required to start the limitations period running, since plaintiff had enough information without a professional opinion to file a 35-page federal RICO complaint alleging fraud and embezzlement by perpetrators); *Kaplan v. Shure Bros.*, No. 96C982 (N.D. Ill. July 18, 1996) (where plaintiff brought breach of contract claim against attorney who represented him in purchase of property later found to be environmentally contaminated, malpractice action arose when plaintiff learned of contamination, not when related environmental litigation terminated). Inasmuch as "the client is presumed unable to discern any misapplication of legal expertise" (*Goodman*, 278 Ill. App. 3d at 690), it cannot

be said plaintiff, as a layman, knew or reasonably should have known defendants' legal advice was actionably erroneous when he was sued by The Chicago Corporation. In fact, defendants assured plaintiff to the contrary through June 1994, according to plaintiff's complaint. Although plaintiff may have been alerted to the *possibility* defendants had given him incorrect legal advice when he dismissed them and retained other counsel in June or July 1994, his tentative damages would not become actionable unless and until the *Chicago Corporation* litigation ended adversely to him. See *Glass*, 276 Ill. App. 3d at 349 (injuries resulting from legal malpractice are pecuniary, not personal); see also *Hermitage Corp.*, 166 Ill. 2d at 86-87 (malpractice statute of limitations started to run when trial court reduced value of plaintiffs' mechanic lien, not when court ruled on motion to reconsider); *Belden*, 203 Ill. App. 3d at 269-70 (statute of limitations in legal malpractice action started to run when the circuit court entered the order that was the subject of the legal malpractice action, not when the circuit court declined to vacate the order or thereafter); *Zupan*, 142 Ill. App. 3d at 399 (statute of limitations in legal malpractice action started to run from the date of judgment, not from the denial of the posttrial motions). As actionable damages were a mere potentiality prior to resolution of the *Chicago Corporation* litigation, plaintiff failed to state a claim for legal malpractice, and his first amended complaint was properly dismissed. Although the time at which a malpractice plaintiff knew or should have known that he had been injured and that his injury was wrongfully caused is normally a question of fact, a court may decide the issue as a matter of law where the facts are undisputed and only one conclusion may be drawn from them. *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171, 421 N.E.2d 864 (1981).

■ Plaintiff argues that even if we find his complaint was properly dismissed, it should not have been dismissed with prejudice. While we concur in the trial court's reasons for dismissing plaintiff's complaint, we believe the trial court abused its discretion in dismissing the complaint with prejudice (see *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 71-72, 660 N.E.2d 875 (1995) (trial court's refusal to allow filing of an amended complaint reviewed under an abuse of discretion standard)), at least to the extent that the court's order suggested plaintiff would not be permitted to refile if and when the *Chicago Corporation* litigation is resolved adversely to him. The facts of the present case are similar to those in *Superior Bank FSB v. Golding*, 152 Ill. 2d 480, 605 N.E.2d 514 (1992).

In *Golding*, the defendant law firm issued a legal opinion assuring the plaintiff bank that the borrowers, partners in a partnership, would be personally liable on a loan being issued to the partnership by the

bank. The firm further guaranteed the genuineness of all the loan guarantees and signatures. When the bank was forced to sue the individual partners on the loan guaranty, one partner defended on the ground his guaranty was a forgery. The bank then amended its complaint to add the law firm as defendants. The supreme court, noting that the record did not reveal whether the matter of the forgery defense had been resolved, ruled that it would be inequitable to summarily dismiss, with prejudice, the bank's action against the firm, since the accuracy of the firm's legal opinion was assumed "pending and undetermined." *Golding*, 152 Ill. 2d at 485. The court noted the bank would be without a remedy if its complaint was dismissed with prejudice and the firm's legal opinion was later found to be inaccurate. In reaching this conclusion, the *Golding* court relied upon the purpose of the Code—"to encourage the trial of cases on their merits and to avoid premature summary dismissals which would frustrate the search for truth." *Golding*, 152 Ill. 2d at 488. Under the rationale of *Golding*, plaintiff's complaint in this case should not have been dismissed with prejudice.

Since the issue is likely to arise if plaintiff's cause of action does eventually accrue and he refiles his complaint, we address the potential application of the statute of limitations. As already discussed, the parties have both contended plaintiff's cause of action accrued in July 1989, when the allegedly negligent advice was first given. Having assumed this date of accrual, both parties limit their discussion to the application of the five-year statute of limitations in effect for legal malpractice actions accruing before January 1, 1991 (see Ill. Rev. Stat. 1991, ch. 110, par. 13—205), and argue over whether equitable estoppel was sufficiently pled to toll the running of the statute.

■ Nevertheless, as the trial court correctly found, plaintiff's cause of action will accrue, if at all, well after January 1, 1991, the effective date of the most recent statute of limitations applicable to legal malpractice actions. See 735 ILCS 5/13—214.3 (West 1992). Section 13—214.3 of the Code provides:

> "(b) An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

> (c) *** [A]n action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.

> * * *

> (f) This Section applies to all causes of action accruing on or after its effective date." 735 ILCS 5/13—214.3 (West 1992).

The effective date of the statute was January 1, 1991.

Were the older statute applicable in the present case, plaintiff would have five years from the date of the discovery of his cause of action (*i.e.*, the date he settles or has an adverse judgment rendered against him in the *Chicago Corporation* litigation) to bring suit, regardless of how distant in time the filing of his complaint was from the date defendants allegedly gave plaintiff negligent advice—the older statute had no repose period. However, under section 13—214.3, plaintiff has two years from the date of discovery, subject to a six-year statute of repose, which runs from "the date on which the [negligent] act or omission occurred." 735 ILCS 5/13—214.3(c) (West 1992). Thus, in this case, the statute of repose would have commenced running on July 19, 1989, when defendants allegedly gave plaintiff inaccurate advice. Assuming no tolling of the statute of repose (see *Cunningham v. Huffman*, 154 Ill. 2d 398, 405-06, 609 N.E.2d 321 (1993) (rejecting continuous course of treatment doctrine as tolling medical malpractice statute of repose but interpreting "act or omission or occurrence" broadly so as to encompass "a continuous and unbroken course of negligent treatment" (emphasis omitted) where the treatment is "so related as to constitute one continuing wrong")), plaintiff's cause of action would be barred by the statute of repose on July 19, 1995, unless he could successfully assert the previously nonexistent statute of repose cut off his cause of action before he had a reasonable time in which to file (see *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 420, 490 N.E.2d 665 (1986) (in the wake of a statute shortening a repose period or providing one where one did not exist previously, a plaintiff whose cause of action is based upon events occurring prior to the effective date of the new statute will be allowed a reasonable period of time in which to bring his action); *Goodman*, 278 Ill. App. 3d at 694-95 (the reasonable period of time in which a plaintiff may bring suit for injuries sustained prior to the effective date of a statute of repose can never be more than the repose period itself, computed from the effective date of the statute)).

■ We note that while a malpractice plaintiff who is injured by his attorney's negligent advice in the course of representation in a litigation setting will rarely be troubled by the new statute of repose, a six-year repose period, running from the date of the negligent advice, may cut off many legal malpractice actions before they accrue when the malpractice occurs in a transactional setting. In a transactional setting, an attorney gives his client advice relevant to some transaction, which may be challenged, if at all, at some indefinite time in the future. Since the client in a transactional setting is infrequently in control of these outside events which call into question the accuracy of the legal

advice he received, and since he generally must await a legal finding in other litigation before he can be reasonably certain he has damages directly attributable to the transactional attorney, a short statute of repose, such as that of section 13—214.3, may cut off many transactional malpractice actions before they accrue.

The effects of the new repose period on transactional malpractice actions may not, however, be as harsh as they first appear. The Code permits persons in plaintiff's position to seek third-party relief in situations such as this. Plaintiff essentially has alleged contingent liability here. See Black's Law Dictionary 321 (6th ed. 1990) (defining contingent liability as "[o]ne which is not now fixed and absolute, but which will become so in case of the occurrence of some future and uncertain event. [Citation.] A potential liability; *e.g., pending lawsuit*") (emphasis added). Section 2—406 of the Code permits a defendant to bring a third-party action against anyone who "is or may be liable" to the defendant as a result of the plaintiff's claim against the defendant. See 735 ILCS 5/2—406(b) (West 1996); *Federal Deposit Insurance Corp. v. Wells*, 164 F.R.D. 472, 474 (N.D. Ill. 1995).

In *Wells*, the Federal Deposit Insurance Corporation as plaintiff brought an action against the defendants, former officers and directors of a bank, alleging the defendants were grossly negligent in approving loans and transactions, and in failing to supervise the bank's lending function. The defendants filed third-party complaints against their former attorneys, who provided legal counsel to the bank and its directors prior to the bank's failure. The third-party complaints alleged reliance upon the faulty advice of their attorneys and that such erroneous advice amounted to malpractice. *Wells*, 164 F.R.D. at 473.

The attorneys in *Wells* were impleaded pursuant to Federal Rule of Civil Procedure 14(a), which, like its Illinois counterpart, section 2—406(b), permits a defendant to bring into a suit any party "who is or may be liable" to him for all or part of plaintiff's claim against defendant. The attorneys in *Wells* objected to impleader on the grounds that the defendants had failed to state a cause of action against them, since defendants had not yet been found liable in the principal action and, therefore, could not allege actual damages as required for a claim of legal malpractice in Illinois. *Wells*, 164 F.R.D. at 474.

In denying the third-party defendants' motion to dismiss, the court initially noted that in each of the cases cited by the attorneys in support of their motion, the defendant in the primary action (like plaintiff in the present case) brought a separate suit for malpractice, rather than impleading the third-party defendants. *Wells*, 164 F.R.D. at 474. Finding this distinction to be "crucial," the *Wells* court found the purposes of the federal and Illinois impleader rules to be identical

and concluded that allowing dismissal of a third-party legal malpractice complaint simply because damages were contingent upon resolution of the primary action would undercut the very purpose of the impleader statute:

> "Allowing the 'actual damages' requirement of a given cause of action to prevent impleader *** would effectively eviscerate [the impleader] statute, as most civil causes of action require that the plaintiff have suffered damages as a result of the defendant's acts or omissions. Accordingly, Illinois courts have recognized generally the distinction which controls here: although a defendant may not bring a separate action for indemnification while the primary lawsuit is pending, a defendant does have 'a choice of filing a third party complaint against a party who may be liable to indemnify him as part of the original action, or of waiting until the original action is over and filing a separate action for indemnity if he is found liable.' " *Wells*, 164 F.R.D. at 474, quoting *Anixter Brothers, Inc. v. Central Steel & Wire Co.*, 123 Ill. App. 3d 947, 953, 463 N.E.2d 913 (1984).

*Cf. Farm Credit Bank*, 197 Ill. App. 3d at 104 (where defendant alleged he might one day be sued by his mother's heir due to attorney's negligent advice, third-party complaint properly dismissed on the basis of speculative damages, but defendant not foreclosed from impleading attorney if and when defendant is sued by mother's heir). Thus, as *Wells* makes clear, impleader may be available to persons in plaintiff's position. See *Anixter Bros.*, 123 Ill. App. 3d at 953 ("In effect, Illinois law allows the third-party indemnity claim to be filed before it accrues, in order to promote settlement of all claims in one action").

This court has previously recognized that a legal malpractice action may be brought via a third-party complaint on an implied indemnity theory. The facts in *Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 667 N.E.2d 1351 (1996), are strikingly similar to those of the present case. In *Kerschner*, the defendants were partners employed by the plaintiff firm. The defendants were considering leaving the firm and forming a new accounting partnership, and they sought legal advice from a law firm regarding these proposed actions. When defendants left their former firm and took a client with them, plaintiff sued them. Defendants then filed a third-party complaint against their attorney, alleging he gave them negligent advice. The appellate court reversed a summary judgment finding in favor of the law firm, holding that defendants had stated a cause of action for implied indemnity based upon quasi-contractual principles:

> "Although not falling precisely within the classic forms of derivative liability, the claims asserted by the plaintiffs and by [the

defendants] are sufficiently interrelated to allow a third-party action. A finding of liability against [the defendants] in the underlying action is a necessary predicate to a determination of liability in the third-party action against [the law firm]. Consequently, the broad purposes of judicial economy are best served by having both actions tried together. In light of the procedural posture of this case, our resolution avoids the fundamental unfairness of allowing the entry of summary judgment in favor of [the law firm], which constitutes an adjudication on the merits, to forever bar a claim for legal malpractice by [the defendants]." *Kerschner*, 282 Ill. App. 3d at 507.

As of January 1, 1995, actions for contribution and indemnity have their own statute of limitations which preempt all other statutes of limitation and repose, except in medical malpractice cases. See 735 ILCS 5/13—204 (West 1996); *Ganci v. Blauvelt*, 294 Ill. App. 3d 508, 514, 690 N.E.2d 649, 652-53 (1998) (finding section 13—204 to be inherently inconsistent and incapable of being applied retroactively). Thus, plaintiff in this cause and others similarly situated are not without a remedy within the framework of the present statutory scheme.

Affirmed as modified.

CAHILL, P.J., and GORDON, J., concur.