**UNIVERSAL MANUFACTURING CO.,
a Delaware corporation, Plaintiff,**

v.

**GARDNER, CARTON & DOUGLAS, an
Illinois partnership, Defendant.**

**No. 01 C 4644.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 1, 2002.

Robert Patrick Cummins, Thomas Cusack Cronin, Cummins & Cronin, LLC, Chicago, IL, for plaintiff.

Vincent J. Connelly, Lisa Ann Dunsky, Mayer, Brown, Rowe & Maw, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

In 1995, Gardner, Carton & Douglas ("Gardner"), a Chicago, Illinois, law firm, acted as local counsel for Universal Manufacturing Co. ("Universal"), a Delaware corporation with its principal place of business in Kansas City, Missouri, in a trademark suit against Douglas Press, Inc. ("Douglas"). Gardner later represented Douglas in patent infringement suits against third parties. Douglas, through

counsel other than Gardner, sued Universal for patent and trademark infringement in 2001. Universal now sues Gardner for legal malpractice, and moves for partial summary judgment on the question of whether Gardner had a conflict of interest. Gardner moved for summary judgment on Universal's entire claim. I grant Gardner's motion and deny Universal's motion.

## I.

Both Universal and Douglas manufacture paper-based "small games of chance," which are, in effect, gambling devices. In the 1995 *Universal v. Douglas* trademark lawsuit, Universal prevailed in the liability stage of a bifurcated trial, and the parties settled prior to the trial on damages. During the settlement negotiations, Douglas offered, in lieu of payment, a license on two unrelated patents owned by Douglas which Douglas claimed Universal was infringing, but Universal rejected the offer and denied infringement. The settlement contained a covenant not to sue related to matters arising out of that litigation. After that suit between Universal and Douglas was resolved, Gardner continued to represent Universal in non-intellectual property matters.

Meanwhile, in 1995, while *Universal v. Douglas* was pending, Douglas sued Henry Kaplan, its attorney in that matter, for legal malpractice. In 1998, Gardner received a subpoena from Kaplan for Gardner's files in the *Universal v. Douglas* trademark suit. An attorney at Gardner contacted Neil Coleman, the president of Universal's parent company, and asked whether Universal wanted Gardner to review the files for privileged or confidential information before producing them pursuant to the subpoena. Mr. Coleman told him to produce the documents without reviewing them first. Kaplan's counsel reviewed the files and made copies of some documents in 1999.

Also beginning in 1995 and continuing until 2000, Douglas and Universal exchanged letters discussing Douglas' claim that Universal was infringing the two patents on which it had offered a license during settlement negotiations in *Universal v. Douglas*. All correspondence relating to these claims was directed to Universal's counsel in Kansas City, and Gardner was unaware of the continuing dispute.

In June 2000, Douglas approached Gardner about the possibility of representing it in some patent prosecutions against Tabco, Inc., International Gamco, and BK Entertainment, Inc., three companies that Douglas believed were infringing the same two patents on which it had offered a license to Universal. During preliminary negotiations Gardner told Douglas that it still represented Universal in some matters. There is a dispute about what Douglas told Gardner about its intent to pursue a similar claim against Universal. Universal says that Debra Fienberg, a vice president at Douglas, told Gardner that Douglas "had issues with Universal regarding the two patents," and that she asked what Gardner's position would be if Douglas pursued litigation against Universal, and that Gardner said it could not represent either party in such a suit. Gardner denies that Ms. Fienberg told it about any "issues" with the two patents. This is a genuine factual dispute,[1] but for reasons I explain below, it is not material.

1. Although one of the Gardner attorneys present at the meeting with Ms. Fienberg said that he could not recall whether she had ever made such a statement, *see* Def's Ex. B at 22, which, standing alone, may be insufficient to create a question of fact, *see Gilbert v. City of* St. Charles, No. 96 C 7101, 1999 WL 182151, at *3 n. 4 (N.D.Ill. Mar.24, 1999), the other attorney denied that statement was ever made (in addition to saying he did not recall that the conversation happened that way), *see* Def's Ex. 22 at 26–28. Universal argues that

In July 2000, Gardner informed Neil Coleman that it wanted to represent Douglas in patent infringement claims against third parties. Mr. Coleman said nothing to Gardner about the ongoing dispute about the two Douglas patents, and Gardner said nothing about Ms. Fienberg's alleged comment about Douglas' "issues" with Universal about those patents. Gardner sent a conflict waiver letter to Universal on July 27, 2000, which Mr. Coleman signed and returned the next day. Gardner began representing Douglas in August 2000, and filed suits against Tabco and Gamco on behalf of Douglas.

In April 2001, Douglas, represented by the law firm Dick & Harris, filed a lawsuit against Universal for patent and trademark infringement. *See Douglas Press, Inc. v. Universal Mfg. Co.*, No. 01 C 2565 (N.D.Ill. filed Apr. 12, 2001). Universal maintains as a defense in that lawsuit that the covenant not to sue in the 1995 settlement of *Universal v. Douglas* bars Douglas' claims. Gardner has had no direct involvement in Douglas' suit against Universal.

In June 2001, Universal fired Gardner and filed this lawsuit. Universal brings three claims against Gardner (breach of contract, breach of fiduciary duty, and professional negligence) based on identical allegations that Gardner labored under a conflict of interest in violation of ABA Model Rule of Professional Conduct 1.7, failed to communicate fully and honestly with Universal in violation of Model Rule 1.4, failed to act competently to protect Universal's interests in violation of Model Rule 1.1, and disclosed confidential information in violation of Model Rule 1.6.[2] Universal also brings a claim for a declara-

tory judgment, asking for a declaration that Gardner: (1) is disqualified from representing Douglas; (2) must turn over to Universal its files from the *Universal v. Douglas* litigation; (3) breached its duties to Universal; and (4) must disgorge the fees it received from Universal during the alleged "conflicted representation."

Gardner seeks summary judgment on all of Universal's claims, and Universal moves for partial summary judgment with respect to Gardner's alleged conflict of interest. Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). I give separate consideration to the evidence and inferences on cross-motions for summary judgment. *See Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir.1998).

## II.

In order to prevail in a legal malpractice claim, a plaintiff must show the existence of an attorney-client relationship, a duty arising from that relationship, a breach of that duty, and actual damages proximately resulting from the breach. *Warren v. Williams*, 313 Ill.App.3d 450, 246 Ill.Dec. 487, 730 N.E.2d 512, 515 (Ill. App.2000). "The mere fact that an attorney may have violated professional ethics

---

this is a "finesse" and should not be credited, but credibility is a jury question.

**2.** The ABA Model Rules have been adopted in relevant part both by the state of Illinois, *see*

Illinois Supreme Court Rules of Professional Conduct, and by the Northern District of Illinois, *see* Local General Rule 83.50.1.

does not, in and of itself, give rise to a cause of action for damages." *Owens v. McDermott, Will & Emery,* 316 Ill.App.3d 340, 249 Ill.Dec. 303, 736 N.E.2d 145, 157 (2000). Nonetheless, the rules of professional conduct may be relevant to determining the standard of care in a legal malpractice claim. *See id.*

] Universal claims that Gardner breached its ethical duty to keep client confidences by turning over its file to Kaplan and disclosing privileged and confidential material. The protection afforded by the attorney-client privilege can be waived, *Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.,* 189 Ill.2d 579, 244 Ill.Dec. 941, 727 N.E.2d 240, 243 (2000), and Universal does not rebut the evidence that it waived the attorney client privilege by authorizing Gardner to release its file from *Universal v. Douglas.* See Def. Ex. 21 at 90–104.[3] Any damages that Universal may have suffered because of the release of confidential information are not the result of a breach by Gardner. Summary judgment in favor of Gardner is appropriate on this claim.

Universal also claims that Gardner labored under a conflict of interest by representing Douglas in patent matters relating to the two patents that it offered to license in the 1995 settlement negotiations while it continued to represent Universal in nonintellectual property matters. Universal claims that Gardner, by representing Douglas in cases relating to the same patents over which Douglas—through other counsel—later sued Universal, and by failing to inform Universal of Douglas' intent to sue, violated Model Rules 1.7 (conflict of interest), 1.1 (competent protection of client's interests), and 1.4 (full and honest

communication). Universal alleges that these breaches caused it to incur the costs of the *Douglas v. Universal* litigation, which it says are $75,000 and climbing, as well as the fees paid to Gardner for all legal work from the conclusion of the *Universal v. Douglas* suit in 1995 to its dismissal in 2001, which it says are approximately $400,000.

] Gardner denies any knowledge of Douglas' intent to sue Universal, but Universal has evidence that Gardner was informed of this intent. This is a genuine factual dispute, which I resolve in favor of Universal for the purpose of Gardner's motion, and I assume that Gardner breached its ethical duties by representing Douglas and not informing Universal of Douglas' intent to sue. Nonetheless, breach of an ethical duty, standing alone, is insufficient to state a claim for legal malpractice. *See Dahlin v. Jenner & Block, L.L.C.,* No. 01 C 1725, 2001 WL 855419, at *7–8 (N.D.Ill. July 26, 2001) ("[T]here is no independent cause of action for breach of professional responsibility or professional ethics.").

The only damages that Universal identifies are legal expenses it has incurred in the *Douglas v. Universal* case and in unrelated cases in which it was represented by Gardner. *See* Pl's Resp. at 7–8. In Illinois, a cause of action for legal expenses incurred due to attorney malpractice requires "the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." *Lucey v. Law Offices of Pretzel & Stouffer, Chartered,* 301 Ill.App.3d 349, 234 Ill.Dec. 612, 703 N.E.2d

---

**3.** Universal denies that Mr. Coleman authorized the release of the files, but the evidence it offers to support its denial is the deposition of Mr. Coleman's *father,* who testified that he never spoke with Gardner about the release of the files and that his son never mentioned it to him. *See* Pl's Resp. to Def's Stmt. of Facts ¶ 12. This is patently insufficient to create a question of fact.

473, 479 (1998). *See also Bartholomew v. Crockett,* 131 Ill.App.3d 456, 86 Ill.Dec. 656, 475 N.E.2d 1035, 1041 (1985) ("Since damage is an element of a professional malpractice claim that is not presumed, [the plaintiff bears the burden of] establishing that 'but for' the attorneys' negligence, the client would have successfully defended or prosecuted the underlying suit."); *Kirkland & Ellis v. CMI Corp.,* No. 95 C 7457, 1996 WL 559951, at *6 (N.D.Ill. Sept. 30, 996) (describing "case within a case" requirement of legal malpractice claims, which requires plaintiff to demonstrate that it lost an underlying cause of action). That is because, if the plaintiff ends up prevailing in the underlying action, there are no damages; the attorneys fees incurred in winning a lawsuit are not the result of malpractice, they are the result of being sued by a third party. *See Lucey,* 234 Ill.Dec. 612, 703 N.E.2d at 478.

There is no evidence here that any of Gardner's alleged ethical breaches in 2000 had anything to do with Douglas' decision to sue Universal, something which it had been contemplating since at least 1995. More to the point, however, the *Douglas v. Universal* lawsuit has not been resolved, so there is no evidence that Universal has any damages at all, much less whether those damages are attributable to Gardner's conduct or to some other circumstances. *See id.* Even if Universal could establish that Gardner had breached its ethical duties, it cannot show that the breach caused it to incur any damages related to the *Douglas v. Universal* lawsuit. Universal likewise cannot show that Gardner's alleged ethical breaches caused it to incur the legal fees it paid to Gardner in totally unrelated actions between 1995 and 2001. It is axiomatic that the effect of something cannot precede its cause; there is no way that Gardner's alleged conflict in 2000 could have caused Universal to incur any legal fees *before* the conflict even ex-

isted. Nor is there any evidence that the legal fees for unrelated work incurred after the breach are at all related to the alleged conflict of interest; there is no evidence that Universal would not have paid identical sums to different attorneys, even if they had fired Gardner on the spot. Because there is no evidence of damages that were caused by Gardner's alleged professional negligence, and because causes of action for breach of fiduciary duty and breach of contract also require that Universal demonstrate that its has suffered damages that are the proximate cause of Gardner's breach, *see Neade v. Portes,* 193 Ill.2d 433, 250 Ill.Dec. 733, 739 N.E.2d 496, 502 (2000) (fiduciary duty); *Midland Hotel Corp. v. Reuben H. Donnelley Corp.,* 118 Ill.2d 306, 113 Ill.Dec. 252, 515 N.E.2d 61, 66 (1987) (contract), summary judgment is appropriate with respect to the malpractice claims in counts I through III.

### III.

In count IV, Universal seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Gardner: (1) is disqualified from representing Douglas; (2) must turn over to Universal its files from the *Universal v. Douglas* litigation; (3) breached its duties to Universal; and (4) must disgorge the fees it received from Universal during the alleged "conflicted representation." Universal does not dispute that Gardner has already returned the files and no longer represents Douglas, so those requests are moot. There is no basis for ordering Gardner to disgorge the fees it received from Universal because I have found that it is not liable for legal malpractice in the absence of evidence that it has damages that were caused by Gardner's conduct. The last request is for a declaration that Gardner breached its duties, but there is a question of fact precluding this determination. Even if I assume that there was a breach, however,

there is no evidence of any actual or imminent damages to Universal as a result of these alleged breaches, so there is no real controversy to be resolved by a declaratory judgment. *See Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 437 (7th Cir. 1994) (holding that, to demonstrate standing for a declaratory judgment, the plaintiff must allege that it has sustained, or is in immediate danger of sustaining, a direct injury as a result of the defendant's conduct and that "the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical' ").

## IV.

I GRANT Gardner's motion for summary judgment, and DENY Universal's motion for partial summary judgment.