**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210283-U

Order filed November 1, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| JUDITH A. DEVRIENDT of DEVRIENDT & ASSOCIATES, LLC, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0283 Circuit No. 19-SC-4411 |
| STEPHEN BRADLEY CARTER, | ) ) ) | Honorable Barbara N. Petrungaro, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Justices Daugherity and Hauptman concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court erred in dismissing defendant's counter-complaint based on the statute of limitations.

¶ 2     Defendant, Stephen Bradley Carter, and his former wife, Victoria Carter, simultaneously sought to individually file for Chapter 7 bankruptcy and obtain an order for dissolution of marriage. Stephen retained Judith A. DeVriendt as counsel in the dissolution matter. Both Victoria and Stephen were granted relief from the automatic stay in the bankruptcy matters, but the circuit court handling the dissolution matter was not allowed to distribute real property in the bankruptcy estates

per the bankruptcy court orders. A dissolution order issued that did not account for nor distribute the real property of the parties. DeVriendt filed suit against Stephen seeking unpaid legal fees. Stephen counterclaimed, alleging that DeVriendt's malpractice in failing to account for and distribute the real property in the dissolution proceeding resulted in him being liable for unpaid property taxes on a piece of property titled in both his and Victoria's name. The circuit court found Stephen's claims were time barred. Stephen appeals. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4                      A. Underlying Dissolution and Bankruptcy Proceedings

¶ 5        In July 2014, Stephen retained DeVriendt to represent him in a dissolution matter involving Victoria. The retainer agreement governing DeVriendt's representation of Stephen states, "This representation is limited to this divorce proceeding only and does not include representing you in any appeal or other proceedings."

¶ 6        During DeVriendt's representation in the dissolution, both Stephen and Victoria separately claimed Chapter 7 bankruptcy. The bankruptcy filings initiated an automatic stay. The stay prevented any action against the bankruptcy estate, comprised of Victoria and Stephen's legal or equitable interests in property. Both Stephen and Victoria advanced their dissolution matter by requesting relief from the stay in their respective bankruptcy proceedings. Stephen stated in his motion to modify the stay that he understood the judge presiding over the divorce could not divide or otherwise take jurisdiction over assets in the bankruptcy estates. Stephen obtained an order modifying stay explicitly stating the order "does not give the Domestic Relations Judge authority to distribute property that is part of the bankruptcy estates of either [Stephen] in this bankruptcy case or that of his spouse [Victoria] ***." The order modifying stay for Victoria contains similar language prohibiting distribution of property in the bankruptcy estate by the circuit court.

¶ 7    Following relief from the bankruptcy stays, the parties pursued dissolution, resulting in a trial on the issues of grounds, maintenance, and division of retirement accounts. All other property, including the real property at issue here, was contained within the respective bankruptcy estates. During her opening statement to the court presiding over the dissolution, DeVriendt presented the bankruptcy orders to the circuit court stating the parties were in bankruptcy, the court was not to distribute property interests in the real property, and the dissolution proceeding focused on the issues of "dissolving the bonds of matrimony and whether it's a maintenance case or not." Stephen was present during this initial court hearing. Stephen later testified that the property owned by the parties was part of the bankruptcy estate and was outside the jurisdiction of the circuit court.

¶ 8    The court ruled on the matters at issue in the dissolution but at no time distributed any real property that was in the bankruptcy estates. DeVriendt was ordered to prepare a judgment for dissolution of marriage memorializing the court's rulings. DeVriendt provided a copy of the judgment to Stephen for review. The dissolution judgment did not include or even reference the distribution of the parties' real property or any other property contained in the bankruptcy estates that was subject to the automatic stay. Judgment was entered on August 31, 2016. With the divorce proceedings concluded, DeVriendt did not perform any further work for Stephen.

¶ 9                                 B. Property Tax Bill

¶ 10    In April 2019, Stephen filed a motion for distribution of marital property in the dissolution matter after receiving a tax bill for approximately $19,000. The property tax bill was related to a property located at 128 Elm Street, Walkerton, Indiana. This property was devised to both Stephen and Victoria by Victoria's parents. The property was a part of the bankruptcy estates at the time of the dissolution. Stephen sought a ruling finding the property and corresponding property taxes were Victoria's alone. The court entered an order requiring Stephen to pay the back taxes.

¶ 11                                    C. Malpractice Claim

¶ 12        In June 2019, DeVriendt filed a complaint seeking fees owed by Stephen for legal services

rendered in the dissolution matter. Stephen filed a two-count counterclaim, alleging breach of

contract and breach of fiduciary duty. He alleged DeVriendt failed to list or account for the disposal

of real property in the dissolution judgment. He also claimed that DeVriendt failed to advise

Stephen that the real property would need to be addressed at a later time due to the pending

bankruptcy. Stephen asserted in his counterclaim that

            "[b]ut for DeVriendt's failure to properly include real property in the final

            decree, and her failure to perform the services per the terms of the contract

            by providing proper and competent advice, [Stephen] would not have had

            to spend additional sums on [attorney] fees and would not be liable for the

            nineteen thousand in taxes owed on Victoria's family home."

¶ 13        Stephen later amended his counterclaim, again, alleging DeVriendt failed to account for or

dispose of real property in the dissolution order. Further, he asserted that DeVriendt failed to advise

him the property needed to be addressed at a later date. Had he been properly advised, Stephen

"would have sought legal services to have his name removed from the [Indiana] property

immediately following his discharge from bankruptcy."

¶ 14        DeVriendt filed a combined motion to dismiss Stephen's counterclaims pursuant to section

2-619.1 of the Code of Civil Procedure (Code). 735 ILCS 5/2-619.1 (West 2018). Initially, the

circuit court denied the motion to dismiss. Nonetheless, upon reconsideration, the court found

Stephen's claims were time barred. Specifically, an action against an attorney must be commenced

within two years from the time the person bringing the action knew or reasonably should have

known of the injury for which damages are sought. The trial court found Stephen knew or

reasonably should have known the Indiana property was not involved in the dissolution proceeding and dismissed Stephen's counterclaim pursuant to section 2-619(a)(5) of the Code. 735 ILCS 5/2-619(a)(5) (West 2018). The court denied Stephen's request to reconsider but included language pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) allowing Stephen to bring the instant appeal.

¶ 15                                    II. ANALYSIS

¶ 16        Stephen argues the trial court erred in granting DeVriendt's motion to dismiss. He asserts that the trial court erred in finding his claims were time barred. He argues the discovery rule applies and that he had no knowledge the property in Indiana was marital or that any action needed to be taken. Judgment on a motion to dismiss is reviewed *de novo*. *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 24.

¶ 17        An involuntary dismissal under section 2-619(a)(5) is appropriate if the "action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). An action against an attorney for malpractice is subject to a two-year statute of limitations. 735 ILCS 5/13-214.3(b) (West 2018). This statute of limitations for legal malpractice incorporates the discovery rule which serves to toll the two-year time frame until such time the plaintiff knows or reasonably should know of their injury. *Id.* Generally, a plaintiff does not sustain an injury until they have suffered an adverse judgment, settlement, or dismissal in the underlying action. *Nelson v. Padgitt*, 2016 IL App (1st) 160571, ¶ 13. But, a malpractice action may accrue before the trial court enters an adverse judgment if it is " 'plainly obvious' " that the plaintiff " 'has been injured as the result of professional negligence or where an attorney's neglect is a direct cause of the legal expense incurred by the plaintiff.' " *Id*. ¶ 14 (quoting *Estate of Bass v. Katten*, 375 Ill. App 3d 62, 70 (2007)). In other words, the limitations period begins when the plaintiff has a reasonable belief

that the injury was caused by the lawyer's wrongful conduct and the plaintiff, therefore, has an obligation to inquire further. *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 673 (1997). Determining when a plaintiff should have discovered an injury usually raises a question of fact but determining when the limitations period commences can be decided as a matter of law if the facts are undisputed and only one answer is reasonable. *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 21.

¶ 18        Here, Stephen alleged that in August 2016 DeVriendt drafted the judgment for dissolution of marriage. The judgment did not mention or distribute the Indiana property. In addition, Stephen alleged that at the time of the judgment, DeVriendt advised him that he did not need to take any further action as to the Indiana property. Stephen alleged that based on DeVriendt's advice, which he relied upon, he took no actions regarding the property and he reasonably believed that no further action was required for the property. At this point, Stephen did not know and should not reasonably have known of the injury caused by DeVriendt's alleged faulty advice. In other words, Stephen's allegations demonstrated that he did not believe he would be responsible for the property taxes based on DeVriendt's advice. This is reasonable, given that clients are not required to seek second opinions to ensure the accuracy of advice. *Lucey v. Law Offices of Pretzel & Stouffer*, 301 Ill. App. 3d 349, 357 (1998). Contrary to DeVriendt's argument on appeal, Stephen was not required to consult with his bankruptcy attorney to determine who remained responsible for the property taxes after the divorce. As result, we find that Stephen's allegations demonstrated he did not have a reasonable belief that he was injured by DeVriendt's advice at the time the trial court entered the judgment for dissolution of marriage. Accordingly, we hold that the trial court erred when it concluded that the statute of limitations began to run at the entry of the judgment for dissolution of marriage.

¶ 19      Instead, in April 2019 Stephen received a letter from the La Porte County Tax Assessor demanding nearly $19,000 in back taxes on the property. At this point, Stephen should have been reasonably aware that he sustained an injury as a result of DeVriendt's alleged negligent advice. Although no adverse judgment had been entered against Stephen at that point, it was plainly obvious that the tax bill had alerted Stephen to the fact that he may be responsible for the taxes. In fact, Stephen alleged that he promptly filed a motion for distribution of the property to ensure that he was not responsible for the tax bill. This demonstrates that Stephen was aware that DeVriendt's alleged faulty advice may have caused an injury to him. Thus, the statute of limitations began to run in April 2019, when Stephen received the letter from the La Porte County Tax Assessor. Given that Stephen's counter-complaint was filed less than two years after this date, the statute of limitations does not bar his claims. Therefore, the trial court erred when it dismissed Stephen's complaint as untimely.

¶ 20      We acknowledge that Stephen contends it was not until the trial court entered an adverse judgment (requiring Stephen to pay the property taxes) against him that he became aware that he sustained an injury relating to DeVriendt's advice. *Padgitt*, 2016 IL App (1st) 160571, ¶ 13. While it is arguable that Stephen did not reasonably believe he had been injured until the date of the adverse judgment, we note that Stephen's counter-complaint was timely filed in either scenario.

¶ 21                                    III. CONCLUSION

¶ 22      For the foregoing reasons, we reverse and remand the judgment of the circuit court of Will County.

¶ 23      Reversed and remanded.