2020 IL App (1st) 191953
Nos. 1-19-1953 & 1-19-1973 (consol.)
Opinion filed November 30, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SUBURBAN REAL ESTATE SERVICES, INC., and BRYAN BARUS, | ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 L 5295 |
| | ) | |
| WILLIAM ROGER CARLSON JR. and CARLSON PARTNERS, LTD., | ) | |
| | ) | Honorable |
| | ) | Diane M. Shelley, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pierce concurred in the judgment and opinion.
Justice Griffin dissented, with opinion.

**OPINION**

¶ 1     Suburban Real Estate Services, Inc., and Bryan Barus retained defendants William Roger

Carlson Jr. and his law firm, Carlson Partners, Ltd., for legal advice in dissolving a company they

co-owned with ROC, Inc. (Plaintiffs will be collectively referred to as "Barus" and defendants as

"Carlson.") After Barus followed Carlson's advice, ROC, Inc. (ROC), sued Barus alleging breach

of his fiduciary duties. Barus retained new attorneys. They informed him that he likely had a legal

malpractice claim against Carlson but that he should wait until the claims by ROC were resolved

before pursuing it. After settling his claims with ROC, Barus filed a legal malpractice complaint against Carlson.

¶ 2    Carlson moved for summary judgment on the grounds that the two-year statute of limitations for legal malpractice claims barred Barus's claims. The trial court granted Carlson's motion, finding that Barus's legal malpractice claims began to accrue when his new attorneys advised him he may have a legal malpractice claim against Carlson. The court concluded Barus knew or should have known when he paid attorney's fees to the new law firm that he had a legal malpractice claim against Carlson.

¶ 3    Barus argues he timely filed his malpractice complaint within two years of the judgment against him, at which time he first knew he had been injured by Carlson's purported negligence. Barus asserts that filing a malpractice claim before then would have been premature because, had he prevailed in the underlying lawsuit, he would have had no injury. We agree. As the defendant in the underlying lawsuit, Barus was not injured for the purposes of triggering the statute of limitations until entry of the adverse judgment in the underlying lawsuit.

¶ 4    We reverse the trial court order granting summary judgment and remand for further proceedings.

¶ 5                                Background

¶ 6    Bryan Barus is the principal and sole owner of Suburban Real Estate Services, Inc., a commercial real estate management company. In February 2006, Suburban Real Estate and another company, ROC, formed a joint company, ROC/Suburban LLC. Suburban Real Estate and ROC each owned a 50% interest in the new company, which acted as a vendor to Suburban Real Estate in supplying commercial property management services. (Michael Siurek, the sole shareholder of ROC, is not a party to the appeal.)

¶ 7    In 2010, Barus decided to end Suburban Real Estate's involvement in ROC/Suburban LLC and retained Carlson and his law firm to represent his company in unwinding the business relationship. On the advice of Carlson, Barus sent a "break-up" letter to Siurek, notifying him of the steps he planned to take to terminate his company's relationship with ROC/Suburban LLC, including no longer using ROC/Suburban LLC as a vendor and taking most of ROC/Suburban LLC's employees.

¶ 8    On the advice of Carlson, Barus implemented the steps described in the letter. About a month later, in August 2010, ROC sued Barus in Du Page County alleging breach of fiduciary duty. Carlson continued as Barus's attorney for a while; Barus eventually retained new attorneys, Gaspero & Gaspero Attorneys at Law, P.C. (Gaspero), to represent him. At a pretrial conference in April 2013, the trial judge told Gaspero he would likely find that Barus's conduct constituted a breach of fiduciary duty if the case proceeded to trial. The judge further said that, to the extent Barus's conduct was recommended by Carlson, the advice constituted legal malpractice and a malpractice claim was "a hundred percent" certainty.

¶ 9    Gaspero told Barus about the trial judge's comments and discussed the possibility of a legal malpractice claim against Carlson. Gaspero also contacted an attorney who specializes in legal malpractice to assess the viability of a malpractice claim against Carlson.

¶ 10    After a bench trial, the trial court entered judgment for ROC on June 17, 2015. Barus reached a settlement with ROC and filed this legal malpractice case on May 26, 2016, alleging that, as a result of Carlson's legal advice, he had to pay more than $500,000 in claims and attorney's fees to ROC.

¶ 11    Carlson moved for summary judgment, arguing that Barus knew or should have known about his alleged negligence in 2011, when Barus retained and started paying attorney's fees to

Gaspero or by 2013 at the latest, when the trial judge told Gaspero that a malpractice claim was a certainty. Carlson argued that the applicable two-year statute of limitations barred Barus's malpractice complaint. In response, Barus argued that the statute of limitations began to run on the entry of the adverse judgment in the ROC litigation in 2015 and, thus, his complaint was timely.

¶ 12    The trial court entered a written order granting Carlson's motion for summary judgment, finding that Barus had notice of his malpractice claim as early as 2010, when ROC filed the underlying lawsuit, and no later than April 2013, when the judge told his new attorney, Gaspero, that a malpractice action against Carlson was a "one-hundred percent certainty" and Gaspero sought advice from another attorney about when a malpractice claim needed to be filed.

¶ 13    The court noted that a legal malpractice claim usually does not begin to accrue until the plaintiff has suffered an adverse judgment, settlement, or dismissal in the underlying action. But, citing this court's decisions in *Construction Systems, Inc. v. FagelHaber, LLC*, 2019 IL App (1st) 172430, and *Nelson v. Padgitt*, 2016 IL App (1st) 160571, the trial court stated that a legal malpractice claim can accrue before an adverse judgment where a client has to pay legal fees as a result of attorney neglect. The trial court found Barus's claim barred. It concluded that Barus discovered or should have discovered the defective legal advice at least as of April 2013, when Gaspero began investigating a potential malpractice claim and Barus incurred attorney's fees "as a direct result of defendants' allegedly-negligent legal advice." (The trial court also entered summary judgment in favor of Gaspero on Carlson's third-party complaint for contribution. Carlson separately appealed that order in appeal No. 1-19-1973, which has been consolidated with appeal No. 1-19-1953 but stayed pending the resolution of this appeal.)

¶ 14                              Analysis

¶ 15                          Standard of Review

- 4 -

¶ 16    Summary judgment should be applied where no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). The trial court may grant summary judgment after considering "the pleadings, depositions, admissions, exhibits, and affidavits on file in the case" and construing that evidence in favor of the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Summary judgment aids in the expeditious disposition of a lawsuit, but it is a drastic measure that should be allowed only "when the right of the moving party is clear and free from doubt." *Id.* We review the trial court's grant of summary judgment *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 17                              Statute of Limitations

¶ 18    An action for legal malpractice must be filed within two years from the time the plaintiff "knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2018). To trigger the limitations period, the plaintiff must have a reasonable belief that the injury was caused by the lawyer's wrongful conduct and the plaintiff, therefore, has an obligation to inquire further. *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 673 (1997). But "[k]nowledge that an injury has been wrongfully caused does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action," and thus the statute of limitations may run despite the lack of actual knowledge of wrongful conduct. (Internal quotation marks omitted.) *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13 (citing *Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004)).

¶ 19    "Injury" requires a legal client suffer a loss for which he or she may seek monetary damages. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). Generally, a plaintiff does not sustain an injury until an adverse judgment, settlement, or dismissal in the underlying action. *Nelson*, 2016 IL App (1st) 160571, ¶ 13. But "a

malpractice action may accrue before the trial court enters an adverse judgment if it is plainly obvious that the plaintiff has been injured as the result of professional negligence or where an attorney's neglect is a direct cause of the legal expense incurred by the plaintiff." (Internal quotation marks omitted.) *FagelHaber*, 2019 IL App (1st) 172430, ¶ 20; *Nelson*, 2016 IL App (1st) 160571, ¶ 14; see also *Goran v. Glieberman*, 276 Ill. App. 3d 590, 595-96 (1995) (client's cause of action for legal malpractice accrued when client retained and paid fees to successor attorneys to duplicate initial attorney's efforts).

¶ 20    Like the trial court, Carlson relies on *FagelHaber* and *Nelson* to argue that the statute of limitations began as early as October 2010, when Barus retained Gaspero, incurring legal expenses related to Carlson's purportedly negligent legal advice, and no later than April 2013, when Gaspero advised Barus he likely had a legal malpractice claim. Carlson contends the two-year statute of limitations had expired when Barus filed the legal malpractice case in May 2016.

¶ 21    Barus asserts, however, that attorney's fees he paid Gaspero were not actionable for attorney malpractice, as no clear finding of attorney neglect had been shown in the underlying case. Rather, at that time, his malpractice claim against Carlson amounted to speculation. Then, in June 2015, on the entry of the adverse judgment, his cause of action accrued. For support, Barus relies on *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349 (1998), and *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364 (2007).

¶ 22    In *Lucey*, the plaintiff, relying on his attorney's advice, solicited clients from his employer before resigning to start his own company. *Lucey*, 301 Ill. App. 3d at 351. The plaintiff's former employer sued him. *Id.* at 352. While the lawsuit by the former employer was pending, the plaintiff sued his attorney for malpractice. *Id.* The trial court dismissed the malpractice complaint, finding it premature because the plaintiff had not yet sustained damages, as the underlying lawsuit by the

former employer remained pending. *Id.* The appellate court affirmed, holding that the legal malpractice action accrued when the former employer's lawsuit against the plaintiff concluded. *Id.* at 355. The plaintiff could possibly prevail against the former employer, so the damages were "entirely speculative until a judgment is entered against the former client or he is forced to settle." *Id.* "[A] cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." *Id.* at 356. The court explained that requiring a client to bring a provisional malpractice suit would undermine judicial economy and the attorney-client relationship. *Id.* at 357.

¶ 23    In *Warnock*, defendants-attorneys represented the sellers in a real estate transaction. *Warnock*, 376 Ill. App. 3d at 365. Before closing, the purchasers asked for more time to obtain financing. *Id.* at 366. The defendants drafted a letter to the purchasers' attorney agreeing to extend the closing date should the purchasers deposit money in an escrow account. *Id.* The letter agreement also contained a liquidated damages clause stating that the earnest money would be forfeited if the closing did not occur. *Id.* When the purchasers failed to secure the necessary financing before closing, the earnest money was released to the sellers, who refused to return it to the purchasers. *Id.*

¶ 24    The purchasers sued the sellers alleging unjust enrichment. *Id.* The sellers retained another law firm to represent them in the purchasers' lawsuit. The trial court held that the letter agreements defendants drafted were unenforceable and entered judgment against the sellers. *Id.* at 367. The sellers then filed a legal malpractice action against the defendants, who moved for summary judgment. The defendants argued the two-year statute of limitations began to accrue when the sellers retained another law firm to defend them against the purchasers. *Id.* The sellers countered

that the statute of limitations began to run when the judgment was entered against them in the underlying action. *Id.* The trial court granted summary judgment for the defendants. *Id.*

¶ 25    The appellate court reversed, reasoning that, when the purchasers filed the underlying action, the sellers did not know whether the purchasers would or would not recover the earnest money held in escrow. *Id.* at 370. The appellate court stated that "a cause of action for legal malpractice will not accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." *Id.* at 372. Until the trial court entered judgment in the purchasers' favor, the sellers did not actually discover and reasonably could not have discovered that the letter agreements were negligently prepared. *Id.* Thus, the entry of the adverse judgment marked the date on which the statute of limitations period commenced. *Id.*

¶ 26    *Lucey* and *Warnock* are directly on point. As in those cases, Barus did not suffer a realized injury until the trial court entered the judgment against him on June 17, 2015. Before then, Barus's damages were "entirely speculative," because he might have prevailed in the underlying case. Although Barus paid attorney's fees to Gaspero before the judgment, there had not yet been a clear finding of attorney neglect. If Barus had filed a malpractice complaint against Carlson and prevailed in the underlying lawsuit, the malpractice complaint would have been pointless and, as this court found in *Lucey*, would undermine judicial economy and the attorney-client relationship. *Lucey*, 301 Ill. App. 3d at 357.

¶ 27    We reject defendant's reliance on *FagelHaber* and *Nelson* for the proposition that the payment of attorney's fees here constituted a "plainly obvious" injury triggering a claim of legal malpractice.

¶ 28    In *Nelson*, the attorney negotiated an employment agreement on the plaintiff's behalf, which stipulated a loss of salary and commission on termination for cause. *Nelson*, 2016 Il App (1st) 160571, ¶ 15. After the plaintiff was terminated for cause, he brought a malpractice action against his former attorney for failing to negotiate an employment contract that was in his best interests. *Id.* ¶¶ 4, 7. There, an adverse judgment was unnecessary for the plaintiff to discover injury—its existence was established when the client filed the underlying suit alleging he had already sustained injury. *Id.* ¶ 16. The court differentiated the case from *Lucey* "where 'actionable damages were a mere potentiality' until there was an adverse judgment." *Id.* ¶ 21 (quoting *Lucey*, 301 Ill. App. 3d at 359). The court explained that, because the client in *Lucey* was the defendant in the underlying suit, he did not know of his injury "until after the adverse judgment because he was not the one to pursue legal action." *Id.* ¶ 22.

¶ 29    In *FagelHaber*, the plaintiff, a steel fabricator, retained the defendant-lawyer to prepare and record a mechanic's lien. *FagelHaber*, 2019 IL App (1st) 172430, ¶ 4. The lawyer filed the mechanic's lien but failed to provide notice to a bank, which later filed a mortgage against the property. *Id.* When litigation over the liens ensued, the client retained a different attorney and learned that the previous attorney had not provided proper notice of the mechanic's lien to the bank. *Id.* ¶ 6. The plaintiff sued the attorney for legal malpractice, asserting that failure to perfect the mechanic's lien resulted in its lien being subordinate to the bank's mortgage lien. *Id.* ¶ 8. The attorney moved for summary judgment, asserting that the statute of limitations barred the plaintiff's legal malpractice action because, when plaintiff retained new counsel, the plaintiff knew or should have known about the failure to serve the required statutory notice of its mechanic's lien on the bank. *Id.* ¶ 9.

¶ 30 The trial court granted the motion for summary judgment, and the appellate court affirmed. Relying on *Nelson*, the court found that the plaintiff's legal malpractice action against the law firm for failing to perfect its mechanic's lien accrued when it paid attorney's fees to replacement counsel. *Id.* ¶ 24. The court noted that replacement counsel sent a letter to the original attorney asking for his cooperation in addressing the "problematic situation" in regard to priority of the plaintiff's mechanic's lien. *Id.* The letter demonstrated (i) the replacement attorney knew of the law firm's error in perfecting the mechanic's lien, (ii) the error caused injury to the plaintiff, and (iii) the plaintiff paid the replacement attorney for services to minimize the law firm's negligence. *Id.* ¶ 29.

¶ 31 The court distinguished *Warnock* and similar cases that have "reiterated the admonishment against provisional or prophylactic legal malpractice cases." *Id.* ¶ 29. Those "cases all have the common thread that the attorney's negligence could not have reasonably been discovered before the trial court entered an adverse judgment." *Id.* Conversely, the court found that an adverse judgment was unnecessary for discovering the negligence "because the negligence was obvious *** when substitute counsel discovered the defect in the lien and began researching and developing alternative theories regarding its unperfected mechanic's lien." *Id.* ¶ 27.

¶ 32 We agree with the holdings in *FagelHaber* and *Nelson*, but neither applies here. In both cases, the clients were the plaintiffs in the underlying suits, and their injuries were established before a judgment in the underlying suit. Hence, the clients knew when they retained new counsel and began paying attorney's fees that they had likely been injured by the attorney's negligence. Conversely, as in *Lucey* and *Warnock*, Barus, as the defendant in the underlying lawsuit, could not have known he had been injured until entry of the judgment against him. As noted, had Barus prevailed in the underlying lawsuit and the trial court found that he did not breach his fiduciary

duties by following Carlson's legal advice, he would have no claim for legal malpractice against Carlson. So, filing a complaint before the judgment would have been premature and pointless.

¶ 33     The judge's comments before trial in the underlying case that a legal malpractice claim against Carlson was "a hundred percent" certainty are misplaced. As noted, with limited exceptions not relevant here, a plaintiff does not sustain an injury until suffering an adverse judgment, settlement, or dismissal in the underlying action. *Nelson*, 2016 IL App (1st) 160571, ¶ 13. The judge's comments may have been made for any number of reasons, and they do not and cannot substitute for adverse judgment, settlement, or dismissal.

¶ 34     The dissent contends Barus suffered an adverse disposition triggering the statute of limitation when the trial court entered a temporary restraining order (TRO) in the underlying lawsuit. Not so. A TRO preserves the status quo until the case can be decided on its merits. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 542 (1983). The TRO prohibited Barus from denying ROC access to company documents and information and from taking steps to further dissolve the company. It does not constitute a judgment adverse to Barus, as it merely required him to maintain the company's status quo while the case was pending. Further, a party may later seek to modify a TRO for any number of reasons, and nothing either indicates or suggests that the trial court or any party considered the TRO as an adverse ruling.

¶ 35     Also without basis is the dissent's contention that the trial court order dissolving the company was an adverse judgment. Indeed, Barus wanted to dissolve the company and, as noted, took steps to unwind the business relationship with ROC. Again, only the trial court's June 2015 finding that Barus breached his fiduciary duties to ROC in trying to dissolve the company constitutes an adverse judgment.

¶ 36     The dissent then asserts that Barus's claim accrued when he incurred attorney's fees in defending against ROC claims. Usually, defendants in a lawsuit pay an attorney to represent their interests, which is exactly what Barus did here. Not until the trial court found he had breached his fiduciary duties did Barus have knowledge that he had been injured by Carlson's legal advice, and filing a legal malpractice lawsuit before then would have been premature. Under the dissent's theory, whenever a legal client follows an attorney's advice and is later sued, the client would need to sue the attorney within two years to preserve his or her malpractice claim, likely long before the outcome of the underlying lawsuit is known and regardless of whether the client believes he or she will prevail in the underlying suit. Not only is this not the law, but it also would unnecessarily place lawyers in an untenable position whenever a client is sued as a result of legal advice.

¶ 37     The statute of limitations on Barus's legal malpractice claim began to accrue when the trial court in the underlying case entered judgment against him, June 17, 2015. He timely filed his complaint less than a year later, May 26, 2016.

¶ 38     We reverse the trial court's summary judgment order and remand for further proceedings.

¶ 39     Reversed and remanded.

¶ 40     JUSTICE GRIFFIN, dissenting:

¶ 41     The majority applies the general rule that a client does not have a legal malpractice claim until the client suffers an adverse judgment caused by the attorney's negligence. That rule is generally applicable because, in most cases, we do not know if the client has actually been harmed by the attorney's negligence until the client is found liable to a third party or suffered some other adverse consequence. That general rule does not apply here.

¶ 42     There are two grounds for my disagreement with the majority's decision. First, the discovery rule states that a cause of action is tolled only until the point that a plaintiff knows she

was injured and knows that the injury was wrongfully caused. The plaintiffs here clearly knew both of those facts more than two years before filing this suit. And plaintiffs, in fact, had a sufficient legal injury because they incurred legal fees directly caused by their former attorney's negligence. Second, plaintiffs suffered a legally cognizable injury that was in existence before the legal claims were even brought against them by a third party. The "underlying" judgment for breach of fiduciary duty in this case makes up only a part of the plaintiffs' total malpractice claim. Therefore, I would find that plaintiffs' malpractice claim accrued more than two years before this case was filed, and I would affirm the circuit court's judgment that plaintiffs' claims are time barred.

¶ 43                    Application of the Discovery Rule

¶ 44     In legal malpractice cases, the discovery rule operates to postpone the start of the period of limitations until the injured party knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused. *Steinmetz v. Wolgamot*, 2013 IL App (1st) 121375, ¶ 30. There is no real dispute that plaintiffs knew about the negligence more than two years before filing this case. Plaintiffs' position, which the majority adopts, is that the "injury" did not exist until the judgment for breach of fiduciary duty was entered. Our precedent establishes that plaintiffs indeed had an injury before that judgment was entered.

¶ 45     We have previously set forth two circumstances in which a legal malpractice claim accrues before an adverse judgment is entered against the client: (1) if it is plainly obvious that the client has been injured as the result of professional negligence; *or* (2) where an attorney's neglect is a direct cause of the legal expense incurred by the client. *FagelHaber*, 2019 IL App (1st) 172430, ¶ 20. The majority has eliminated the disjunctive "or" from the criteria we have previously recognized. See *supra* ¶¶ 26-27. The majority holds that just incurring otherwise-unnecessary legal

fees as a result of an attorney's malpractice is not enough. Instead, the majority states that the payment of attorney fees itself must constitute "a plainly obvious" injury. *Supra* ¶ 27.

¶ 46 A legal malpractice claim accrues, regardless of an adverse judgment being entered against the client, when the attorney's neglect is a direct cause of legal expenses incurred by the plaintiff. *FagelHaber*, 2019 IL App (1st) 172430, ¶ 20. Thus, a client's claim for malpractice accrues, prior to an adverse judgment being entered against the client, once the client knows about the negligence and incurs legal expenses that stem from the attorney's negligence. *Id.* ¶ 25. In this case, plaintiffs knew about the negligence more than two years before filing this case. Likewise, plaintiffs incurred legal expenses stemming directly from the negligence more than two years before filing this case.

¶ 47 The record demonstrates that plaintiffs had actual knowledge of defendants' negligent provision of legal services at least as early as April 2013, when a pretrial conference was held in the ROC lawsuit. At the pretrial conference, the trial judge in that case "made it clear that it was his belief that the [Carlson defendants] committed malpractice." Plaintiffs' attorney testified that the trial judge in the underlying case did not suggest that there was just a *possibility* of a viable malpractice claim against defendants but, rather, that the trial judge indicated at the pretrial conference that "it was one hundred percent true that there was a malpractice case." While the trial judge's comments at a pretrial conference would not necessarily constitute an incontrovertible indication of plaintiffs' knowledge of the malpractice, plaintiffs' words and conduct after that conference *do* establish their knowledge that they had a viable claim for malpractice at that time.

¶ 48 The effect that the trial judge's comments had on the plaintiffs was that, following the pretrial conference, plaintiffs' attorneys were convinced that malpractice had been committed and they began to search for attorneys to handle a malpractice case for plaintiffs. In April 2013, plaintiffs paid legal fees to the Gaspero firm to investigate and prepare for a malpractice claim

against defendants. The Gaspero firm contacted another attorney, Rebecca Rothman, indicating that it represented someone that was "the victim of fairly grave negligence." The record makes clear that plaintiffs themselves were informed about the existence of the negligence and discussed it with their attorney. Plaintiffs had knowledge about the viability of a malpractice case, such that, within a couple days of the pretrial conference, plaintiff Bryan Barus searched for and retrieved records of his correspondence with defendants for the purposes of evaluating a malpractice case against defendants.

¶ 49     The foregoing demonstrates that plaintiffs obviously knew about the negligence at least as early as 2013 and probably much sooner. Plaintiffs do not contest on appeal that they knew about defendants' negligence by 2013. They simply argue that they did not have an injury yet. However, there is significant evidence that plaintiffs incurred attorney fees directly as a result of the negligence. Those fees are sufficient to constitute an "injury" for purposes of the statute of limitations and the discovery rule.

¶ 50     "Payment of attorney fees is a monetary loss sufficient to constitute damages if the additional fees are directly attributable to former counsel's neglect." *FagelHaber*, 2019 IL App (1st) 172430, ¶ 25. Nearly every legal fee incurred by plaintiffs from the Gaspero firm from 2011 forward was incurred because of the negligent legal services defendants performed. Moreover, plaintiffs incurred fees directly as a result of preparing for a malpractice case. Plaintiff paid fees to the Gaspero firm to investigate and prepare for a malpractice claims against defendants in April 2013. The Gaspero firm collected and reviewed e-mail correspondence between plaintiffs and defendants, and it conferred with malpractice counsel concerning a malpractice case. It is inescapable that those fees constituted a cognizable injury to plaintiffs. Those fees were incurred

as a direct result of defendants' negligence and would not have been necessary absent defendants' negligence.

¶ 51    Plaintiffs' "payment of the additional legal fees constituted actual damages and, coupled with [their] knowledge of [defendants'] negligence, commenced the running of the statute of limitations." *FagelHaber*, 2019 IL App (1st) 172430, ¶ 25; see also *Nelson v. Padgitt*, 2016 IL App (1st) 160571, ¶ 23. Our precedent establishes that the incurrence of attorney fees started the limitations clock in this case at least as early as April 2013.

¶ 52                              Breach of Fiduciary Duty Is Only *Part* of the Injury

¶ 53    Defendants represented plaintiffs from May 2010 until October or November of 2010. The Gaspero firm took over representing plaintiffs in October or November 2010, and the Gaspero firm represented plaintiffs for the next four-plus years thereafter. On January 26, 2011, the trial court in the equitable action brought by ROC against plaintiffs entered an order dissolving the business entity. It was not until after the trial court dissolved ROC/Suburban LLC that ROC asserted claims against plaintiffs for breach of fiduciary duty. At the time the claims for breach of fiduciary duty were asserted, defendants' representation of plaintiffs had concluded months earlier, and plaintiffs had already incurred and paid legal fees from Gaspero. Plaintiffs had already suffered harm from the negligence and set about incurring legal fees such that they were "injured" before the "underlying" claims had even been filed.

¶ 54    The whole scope of the Gaspero firm's representation of plaintiffs in this matter was to mitigate the damage caused by defendants' negligent representation. Immediately upon taking over representation of plaintiffs, the Gaspero firm began attempting to ameliorate the damage done to plaintiffs by defendants' negligence. In November 2010, the Gaspero firm filed a motion to modify the temporary restraining order that the trial court entered in the underlying case. The

temporary restraining order was only entered because of defendants' negligence. Plaintiffs were billed for and paid fees to the Gaspero firm in an attempt to modify the temporary restraining order, an order that was directly occasioned by the negligent advice provided by defendants. See *Goran v. Glieberman*, 276 Ill. App. 3d 590, 595-96 (1995) (a client's cause of action for legal malpractice accrued when her successor attorneys were required to duplicate her initial attorney's efforts). The Gaspero firm continued to represent plaintiffs at the court proceedings that led up to the court dissolving the business. All of those fees were generated before the "underlying" breach of fiduciary duty claims had even been asserted, and the incurrence of those preceding fees had nothing to do with defending against the claims for breach of fiduciary duty. Thus, the outcome of the breach of fiduciary duty claims did not control whether plaintiffs were "injured."

¶ 55    Before ROC was even seeking money damages from plaintiffs for breach of fiduciary duty, plaintiffs suffered an adverse disposition. The court ruled against plaintiffs on ROC's claim for injunctive relief. While temporary injunctive relief was entered while defendants were still plaintiffs' attorneys, the conclusion on the equitable claims came after defendants were replaced by the Gaspero firm and after the Gaspero firm was already generating fees on plaintiffs' behalf. Plaintiffs had new counsel before the equitable claims had been fully adjudicated, and they suffered an adverse disposition that was directly caused by defendants' negligence—an order dissolving the company.

¶ 56    The majority states that the dissolution of the company was not an adverse ruling. The trial court dissolved the company under section 35-1 of the Limited Liability Company Act (805 ILCS 180/35-1(a)(4)(B)-(C) (West 2018)), finding that plaintiffs' conduct made the company's activities unlawful or made it such that it became otherwise impractical to carry on the company's business in accordance with the operating agreement. Plaintiffs' actions, which they took as a result of

following defendants' advice, clearly made it impossible for the business to carry on in accordance with the company's business purpose. So to the extent the majority demands an adverse disposition, plaintiffs suffered one in 2011. Plaintiffs obviously considered the rulings to be adverse because they contested the entry of the orders and even tried to modify one of them after it was entered. But it is not the adverse rulings that caused the claims to accrue; it was the incurrence of additional fees in those proceedings—fees directly caused by defendants' negligence. The adverse ruling in the equitable portion of the case just further demonstrates that plaintiffs knew of their injury long before this case was brought and even before the fiduciary duty claims were filed. When plaintiffs were ultimately unsuccessful in defeating ROC's claims in equity, plaintiffs had already incurred fees from the Gaspero firm, but the claims for breach of fiduciary duty had not even been asserted.

¶ 57    Plaintiffs had a legal injury for which they would be entitled to seek redress from defendants that predates and was not dependent upon the outcome of the breach of fiduciary duty claims. The *existence* of plaintiffs' legal malpractice claim was never dependent on outcome of the breach of fiduciary duty claims asserted by ROC. Plaintiffs had a sufficient injury for legal malpractice purposes regardless of the outcome of the breach of fiduciary duty case. Plaintiffs simply did not know the *extent* of their damages yet, *i.e.*, would the damages *additionally* include amounts assessed for a breach of fiduciary duties. But under the discovery rule, the statute of limitations is not tolled to the point that a party knows the full extent of the injury. *Kadlec v. Sumner*, 2013 IL App (1st) 122802, ¶¶ 27, 29. Instead, the limitations period is tolled only until the point that the party knows it was injured and that the injury was wrongfully caused. *Id.*; see also *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 45 (" 'our cases adhere to the general rule that the limitations period commences when the plaintiff is injured, rather than when the plaintiff

realizes the consequences of the injury or the full extent of her injuries' " (quoting *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 364 (1995))). Before the claims for breach of fiduciary duty were asserted against plaintiffs, plaintiffs knew about the negligence and began paying attorney fees to try to mitigate the harm caused by their prior counsel, meaning that they were legally "injured" by the attorney's negligence. They just did not know how badly they were injured yet.

¶ 58    The majority states that, if plaintiffs had first filed a malpractice claim against defendants and then later prevailed in defending the breach of fiduciary duty claims against them, then the malpractice case would have been "pointless." *Supra* ¶¶ 26, 32. The majority's holding implies that plaintiffs would not have any claim for legal malpractice absent plaintiffs being found liable in the breach of fiduciary duty case. But plaintiffs already had all the elements for a judiciable malpractice claim before they were even accused of breaching their fiduciary duties by ROC. In fact, plaintiffs are seeking fees in this case for matters wholly outside that breach of fiduciary duty case, such as fees charged by the Gaspero firm for the equitable portion of the case against plaintiffs in which they incurred fees in an attempt to modify the temporary restraining order and prevent the imposition of permanent injunctive relief. Plaintiffs suffered a cognizable legal injury long before the adverse judgment on the breach of fiduciary duty claims, and *the extent* of the injury simply increased when plaintiffs were found liable for breaching their fiduciary duties.

¶ 59    Even if plaintiffs had somehow succeeded in avoiding an adverse judgment against the breach of fiduciary duty claims, they still would have had a legal injury for the fees that they incurred from the Gaspero firm unrelated to the breach of fiduciary duty claims. The additional fees brought about by the breach of fiduciary duty claims only enhanced the financial loss attributable to defendants. Those additional fees did not create the legal injury in the first place. Plaintiffs had a fully formed malpractice claim, and they could have sought recovery from

defendants even if they were never sued for breach of fiduciary duty or if they had successfully defended against the action.

¶ 60    It is not at all uncommon that a party aggrieved by malpractice files a lawsuit before the underlying case is fully resolved. In *FagelHaber*, we discussed the common practice of a party filing a malpractice case and then having that case stayed until the full extent of damages is known. *FagelHaber*, 2019 IL App (1st) 172430, ¶ 31. Frequently, the filing of a suit at this stage gives the malpractice insurance carrier and the other parties an opportunity to plot a more efficient resolution of the disputes.

¶ 61    Like in *FagelHaber*, it is clear that plaintiffs knew about defendants' negligence, incurred and paid legal fees because of that negligence, and therefore suffered an actual and actionable injury before an adverse judgment was ever entered against them in the underlying action. *FagelHaber*, 2019 IL App (1st) 172430, ¶ 30. Once plaintiffs knew that defendants were negligent and incurred fees from successor counsel to mitigate the negligence committed by defendants, plaintiffs had a viable malpractice claim against defendants, and the statutory period began to run. *Goran*, 276 Ill. App. 3d at 596.

¶ 62                              Conclusion

¶ 63    Because the legal malpractice claim plaintiffs assert against defendants accrued more than two years before this case was filed, I would hold that plaintiffs' claims are barred by the two-year statute of limitations for claims against attorneys. I would affirm the trial court's judgment, and therefore, I respectfully dissent.

**No. 1-19-1953**

| | |
|---|---|
| **Cite as:** | *Suburban Real Estate Services, Inc. v. Carlson*, 2020 IL App (1st) 191953 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-L-5295; the Hon. Diane M. Shelley, Judge, presiding. |
| **Attorneys for Appellant:** | John W. Moynihan, of Downers Grove, for appellants Suburban Real Estate Services, Inc. and Bryan E. Barus. |
| **Attorneys for Appellee:** | John J. D'Attomo, of Nisen & Elliott, LLC, of Chicago, for appellees William Roger Carlson Jr. and Carlson Partners, Ltd.<br><br>Rebecca M. Rothmann, of Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago, for other appellees. |